Filed Feb. 27, 1891.

No. 15,913.

WINDELL v. TROTTER, ADMINISTRATOR.

DESCENT.—*Interest of Childless Second Wife.*—*Reversionary Interests of Heirs.*— *Rights of Creditors.*—The act of March 11th, 1889, provides that where a man marries a second wife, and has by her no children, and dies, leaving children by his first wife, the interest of such second childless wife in the lands of the decedent shall be only a life-estate, and the fee of the same shall, at the death of such husband, vest in such children, subject only to the life-estate of the widow.

*Held,* that the portion of the land in which the widow takes a life-estate is free from the demands of creditors, and is not subject to be made assets by sale for the payment of debts.

*Held,* also, that where all the lands of the decedent are, with the consent of the widow, sold to make assets, she is entitled to the value of her life-estate out of the proceeds of the portion subject to the life-estate, and that the children are entitled to the remainder of the proceeds of such portion.

From the Harrison Circuit Court.

*W. N. Tracewell* and *R. J. Tracewell,* for appellant.

*G. W. Self,* for appellees.

COFFEY, J.—The appellee, Leslie C. Trotter, as administrator of the estate of James Woodward, deceased, filed a petition in the Harrison Circuit Court to sell the lands of the decedent to make assets with which to pay debts. He made parties defendant to said petition Martha Woodward, the widow of the deceased, and the appellant, and James Woodward, Jr., his children by a former wife. Martha Woodward was a second wife, by whom the deceased had no children. The said Martha filed her written consent to the sale of all the land, electing to take her interest in the proceeds of the sale. The administrator sold the land for the sum of $14,438, and upon the filing of the report of sale the said Martha filed her intervening petition, praying that the present value of her life-estate in one-fourth of said amount, be ascertained and paid over to her, which was done. Of the one-fourth of said sum, after paying the widow the value of her life-estate, there remained the sum of $1,193.82. The appellant filed a petition setting forth that she and the said James Woodward, Jr., were the only heirs at law of James Woodward, deceased, who was their father, and praying that one-half of this sum be paid over to her free from the demands of creditors, to which petition the court sustained a demurrer, and she excepted.

The only question involved in the case relates to the correctness of this ruling.

It is contended by the appellee that immediately upon the death of James Woodward his real estate descended to his

children by a former marriage, in fee simple, subject to a life-estate in the widow in one-fourth, and that the whole of said land was liable to be sold to make assets for the payment of debts.

On the other hand it is contended by the appellant that under the statutes of this State one-fourth of the land of which James Woodward died seized was free from the demands of creditors, and that it was not subject to be made assets for the payment of the debts due from said estate.

Under the proviso in section 2487, R. S. 1881, construed in connection with section 2483, it was held that the estate which a widow takes in the real estate of her husband is a fee simple, whether she be a first, second or subsequent wife. If, however, she had no children by the husband from whom she inherits the land, his children became, by compulsion of law, her heirs, in case they or their descendants survived her. While she lived they had no interest in the land. *Erwin v. Garner*, 108 Ind. 488; *Thorp v. Hanes*, 107 Ind. 324; *Bryan v. Uland*, 101 Ind. 477; *Gwaltney v. Gwaltney*, 119 Ind. 144.

By an act of the General Assembly which took effect March 11th, 1889 (Acts 1889, p. 430; Elliott's Supp., section 423), section 2487 was amended so that the proviso thereto reads as follows: "*Provided*, That if a man marry a second or subsequent wife and has by her no children, but has children alive by a former wife, the interest of such second or subsequent childless wife in the lands of the decedent shall only be a life-estate, and the fee of the same shall at the death of such husband vest in such children, subject only to the life-estate of the widow."

As James Woodward departed this life after the above statute took effect, it is conceded that his widow took only a life-estate in his land. The controversy here involves the question as to whether the fee simple to the one-fourth, in which she took a life-estate, was subject to sale by the administrator to make assets for the payment of debts.

At common law the title to real property vested absolutely in the heir upon the death of the ancestor, and was not subject to be made assets for the payment of debts.

In the absence of some statutory provision, therefore, the land for which the fund now in controversy was sold belonged to the heirs and was free from the demands of creditors. The question then depends upon the construction to be placed upon our statutes providing for the sale of land by administrators.

Section 2333, R. S. 1881, provides that "The real estate liable to be sold for the payment of debts, when the personal estate shall be insufficient therefor, shall include:

"*First.* All the real estate held or possessed by the deceased at the time of his death by legal or equitable title (except such as was held upon a contract for the purchase of land), and all interest in real estate which would descend to his heirs.

"*Second.* All school or other lands held on a certificate of purchase of the general government or State of Indiana.

"*Third.* All lands, and any interest therein, which the deceased, in his lifetime, may have transferred, with the intent to defraud his creditors."

It is apparent upon the reading of this statute that it is broad enough to cover any vested interest a deceased may have in land at the time of his death. The exception to the sweeping provisions of this statute are found in section 2347 of the same act. That section is as follows: "If the decedent leave a widow, and the real estate owned by him at his death shall not exceed ten thousand dollars in value, the court shall direct the sale of the undivided two-thirds part thereof for the payment of said debts and liabilities; and if the value thereof exceed ten thousand dollars, and do not exceed twenty thousand dollars, the court shall order the sale of the undivided three-fourths thereof; and, if it exceed in value twenty thousand dollars, the undivided four-fifths thereof for said purpose."

Section 2333 and this section must be construed together, and, when so construed, it seems plain to us that the power to sell the undivided one-third, one-fourth, or one-fifth, as the case may be, to make assets for the payment of debts, is not granted. Under the provisions of these statutes the administrator could not legally procure an order of the court to sell the undivided one-third or the other quantities named, without the consent of the widow. In this case, if the widow had not given her assent thereto, no order could have been entered by the court to sell a greater quantity than three-fourths of the land of which James Woodward died seized. If no order could have been made for the sale of an undivided one-fourth, it could not have been converted into assets for the payment of debts.

But, as we have seen, she gave her consent to the sale of all the land, and the question arises as to what effect, if any, such consent had upon the interest of the children and heirs of the deceased, in whom was vested the fee simple of the one-fourth.

This leads us to inquire into the purpose sought to be accomplished by the General Assembly by the amendments passed in 1889, above referred to. As it made no provision for converting the portion of the land formerly taken by the widow into assets for the payment of debts, it is fair to presume that it was intended as a provision wholly for the benefit of the heirs by a previous wife.

There are many other facts and circumstances which tend strongly to support this presumption.

As we have seen, under the statute as it existed prior to the amendment, the second or subsequent wife took a fee simple interest in the lands of her husband, and the children by a former wife had a mere expectancy. The widow was at liberty to destroy or remove the buildings, to strip the land of valuable timber and to commit all manner of waste, while the heir in expectancy had no means to prevent it. He could not maintain a suit to enjoin such waste, and it

often occurred, we may presume, that when the land came to the children by a former marriage it was of little value. *Gwaltney* v. *Gwaltney, supra.*

By the amendment of 1889, which vests the fee simple to that portion taken by the widow in the children by a former marriage, it was doubtless the intention of the Legislature to place such children in a situation to protect the land from waste, and thus preserve its value.

It was a provision wholly for the benefit of the children, without any intention to enlarge the rights of the creditors or administrator of the estate.

We are of the opinion that the widow, who owned a life-estate only, could not affect the interest of the children, who owned the fee, by giving her consent to a sale of the whole of the land. It is true that the heirs can not be heard to say that the land was not properly sold, because they were parties to the petition to sell and are bound by the proceedings, but it does not appear that any adjudication was had as to the fund now in dispute which would estop them from asserting any claim they may have thereto. The money paid to the widow was all she was entitled to receive. It represents the value of her life estate in one-fourth of the land sold by the administrator. What remains of the fund derived from the sale of one-fourth of the land represents the value of the fee simple which was vested in the children by a former marriage.

Upon this latter fund the widow has no claim. As this, one-fourth was not subject to sale by the administrator to make assets with which to pay debts, we are of the opinion that the administrator has no claim upon it. It belongs to the children of the deceased by a former marriage.

This conclusion does no injustice to the creditors, for their rights remain unchanged by the amendment of 1889.

It follows, from what we have said, that the circuit court

erred in sustaining the demurrer to the petition of the appellant.

Judgment reversed, with directions to overrule the demurrer to the petition and for further proceedings not inconsistent with this opinion.

Filed Feb. 27, 1891.